**Charles Eugene RILEY, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–89–237–CR.**

Court of Appeals of Texas, Fort Worth.

Jan. 30, 1991.

Toby Goldsmith, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Chris Marshall, and Mary C. Merchant, Asst. Dist. Attys., Fort Worth, for appellee.

Before HILL, LATTIMORE and DAY, JJ.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

DAY, Justice.

The State of Texas filed a Petition for Discretionary Review in this case pursuant to Rule 200 of the Texas Rules of Appellate Procedure. Having considered the State's petition, we hereby withdraw the prior opinion and judgment dated December 19, 1990, and substitute the following opinion and judgment therefor.

Charles Eugene Riley, Jr. appeals his conviction for the offense of aggravated sexual assault. *See* TEX.PENAL CODE ANN. sec. 22.021 (Vernon 1989).

We reverse and remand.

Riley walked the victim, C.H., to her car and thereafter pulled out a knife and forced his way into the car with her. Riley directed C.H. to drive to a secluded parking

lot, where he sexually assaulted her. Riley then stabbed C.H. numerous times with the knife. C.H. escaped to a nearby restaurant and called the police. Riley was subsequently arrested.

Riley's first point of error contends the trial court erred by failing to properly apply the law to the facts in the charging paragraph of the jury charge on the issue of the affirmative defense of insanity. The State asserts that Riley's requested charge was substantially the same as that included in the charge given by the court and was therefore unnecessary.

■ The Texas rules of procedure give the trial court considerable discretion to submit instructions as shall be proper to enable the jury to render a verdict. When a requested instruction is merely a shade or repetition of an instruction already given, it may be refused by the trial court. There is no error in refusing a requested instruction when the substance of the matter contained therein is included in the court's charge. *See Davis v. State*, 651 S.W.2d 787, 792 (Tex.Crim.App.1983) (no harm is shown when refused charge is adequately covered by the charge given). The trial court should refuse to submit an unnecessary or superfluous instruction, even if it is a correct statement of the law. *See Philen v. State*, 683 S.W.2d 440, 445 (Tex.Crim.App.1984) (refusal to give requested charge which is repetitious of main charge is not error).

■ However, Texas procedure requires the judge to provide the jury with both an abstract statement of the law *and* an application of that abstract statement to the evidence in the case. TEX.CODE CRIM. PROC.ANN. art. 36.14 (Vernon Supp.1991). An abstract charge does not inform the jury of what facts, if found by it, would constitute proof of the elements of the offense. *Williams v. State*, 622 S.W.2d 578, 579 (Tex.Crim.App. [Panel Op.] 1981). The trial court's charge must *clearly* apply the law to the facts of the case, rather than state a mere abstract proposition of the law and general principles contained in the statute. *Antunez v. State*, 647 S.W.2d 649, 650 (Tex.Crim.App.1983) (quoting

*Williams*, 622 S.W.2d at 579); *Jordan v. State*, 782 S.W.2d 524, 525 (Tex.App.— Houston [14th Dist.] 1989, no pet.). It is not sufficient for the jury to receive an abstract instruction on the law and then render a verdict on whether the law has been violated.

The charging and application paragraphs of the charge given by the court in the instant case read, in pertinent part, as follows:

The burden of proof is on the State to prove beyond a reasonable doubt that at the time of the conduct charged the defendant was sane; that is, that he was not suffering from a severe mental disease or defect rendering him unable to know that his conduct was wrong.

Therefore, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the offense of aggravated sexual assault as alleged in the indictment, or the lesser included offense of aggravated assault as hereinbefore charged, but you further find, or have a reasonable doubt thereof, that at the time of the conduct charged, Charles Eugene Riley, Jr., as a result of a severe mental disease or defect, did not know that his conduct was wrong, you will acquit the defendant and say by your verdict, "not guilty by reason of insanity."

■ The State bore the burden of proving Riley *sane* in light of the fact that Riley had been previously adjudicated insane by a court of another jurisdiction. *Manning v. State*, 730 S.W.2d 744, 748 (Tex.Crim.App.1987); TEX.CODE CRIM. PROC.ANN. art. 46.02 (Vernon 1979); *see also Morris v. State*, 744 S.W.2d 290, 294 (Tex.App.—Corpus Christi 1987, pet. ref'd) (presumption of insanity continues after defendant is adjudicated insane, and State has burden to prove defendant's sanity at time of offense beyond all reasonable doubt).

We are persuaded that the court's charge is ambiguous with regard to the word "sane" and its legal definition to the degree that a jury could be confused as to who had the burden of proof on the issue

of insanity. In an attempt to remedy this ambiguity, Riley requested the court charge the jury in a manner that would insure consistency with regard to the word "sane" and its legal definition. Specifically, Riley urged the court to include either the word "sane," or alternatively, a legal definition thereof, in both the charging and application paragraphs. This, Riley urged, would clarify the confusion created by use of dissimilar wording in the charging and application paragraphs of the charge. Riley also made the following objection:

> [T]o be consistent with the burden of proof portion of the charge and put in there that, *"if they find or have a reasonable doubt thereof that the Defendant was sane; that is not suffering from a severe mental disease or defect"* —in that portion of the charge so it will be consistent and so that this Defendant will have the benefit of the burden of proof paragraph where it says, "The burden of proof is on the State to prove beyond a reasonable doubt that at the time of the conduct charged, the Defendant was sane; that is that he was not suffering from a severe mental disease or defect rendering him unable to know that his conduct was wrong." So we're going to object to the leaving out the burden of proof pertaining to the Defendant being sane. [Emphasis added.]

The charge given in this case would have been unambiguous and beyond challenge had *both* the charging and application paragraphs included not only the word "sane," but *also* the legal definition of the word "sane" in both paragraphs, as follows:

> The burden of proof is on the State to prove beyond a reasonable doubt that at the time of the conduct charged the defendant was sane; that is, that he was not suffering from a severe mental disease or defect rendering him unable to know that his conduct was wrong.
>
> Therefore, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the offense of aggravated sexual assault as alleged in the indictment, or the lesser included offense of aggravated assault as hereinbefore charged, and you further find, beyond a reasonable doubt, that at the time of the conduct charged, Charles Eugene Riley, Jr. was sane; that is, that he was not suffering from a severe mental disease or defect rendering him unable to know that his conduct was wrong, then you will find the defendant guilty.
>
> Unless you so find, or if you have a reasonable doubt thereof, you will say by your verdict, "not guilty by reason of insanity."

This requested charge is worded exactly as the charge should have been phrased so as to properly place the burden of proof.

■ Riley bears the burden of demonstrating not only the existence of error, but also the harmfulness of the error. Any error in the charge, over timely objection in the trial court, requires reversal if such error is "calculated to injure the rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g); TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon 1981). In other words, a properly preserved error will call for a reversal as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* The purpose of this review is to illuminate both the actual and theoretical harm to the accused. *Id.* at 174.

■ We find that a genuine ambiguity existed in the court's charge to the jury. The language in the application paragraph failed to comport with that of the charging paragraph and that generally accepted by the courts. *See generally* P. McCLUNG, JURY CHARGES FOR TEXAS CRIMI-

NAL PRACTICE 53 (1988).[1] We conclude that this ambiguity improperly shifted the State's burden of proof with regard to the issue of sanity onto the defendant and may have confused the jury. We further find that this error constituted *harmful* error. The record reflects the following facts with respect to the issue of Riley's state of mind at the time of the offense:

1. Riley heard voices and hallucinated (SF 262, 283, 298, 325, 327);

2. These voices had become more severe since he had been taken off of his medication some two or three months prior to the offense (SF 262, 265);

3. Riley described the voices as "almost blinding" prior to the time the offense was committed (SF 327);

4. A police officer noted that Riley said "voices have been talking to me" shortly after the offense was committed (SF 391–92);

5. Riley remembered that he had done something terrible but could not remember what he had done (SF 262, 283, 327, 329–30);

6. Riley had little or no memory of what happened after committing the offense against C.H. (SF 263, 325);

7. Riley's recollected the incident once he was jailed and readministered his medication (SF 265, 322, 329);

8. Riley attempted to admit himself for a psychiatric evaluation (SF 323);

9. A lay witness who had dealt with people having psychiatric problems such as those exhibited by Riley (SF 268) testified as to the following:

   a. Riley was not taking the medications prescribed for his psychological problems at the time of the offense (SF 270, 326);

   b. Without such medication, Riley was having difficulty distinguishing reality from unreality (SF 272); and

   c. He advised Riley to admit himself to T–11, the psychiatric ward at John Peter Smith Hospital (SF 273);

10. Riley was drawing disability for mental problems and had been drawing disability for the past two years (SF 330–31);

11. The director of psychiatry at John Peter Smith Hospital testified to the following:

   a. Riley was suffering from *feelings disturbances*, which are symptomatic of feeling tone disorder, rather than *thinking disturbances*, which are symptomatic of schizophrenia; and

   b. Riley exhibited no signs of psychosis (SF 363, 367);

12. The State urged that this individual's testimony alone proved beyond a reasonable doubt that Riley was sane at the time of the offense (SF 434–35, 438, 426–27);

13. (While not controlling in the case at bar,) Riley was previously adjudicated not guilty by reason of insanity for a prior offense in California, the judgment was never vacated, and Riley was still subject to the judgment (SF 266, 319, 320);

14. Riley was committed in a mental institution for approximately five years after the judgment of the California court (SF 319);

15. Riley's counsel contended, exhaustively but without success, that the court's charge to the jury, because of a patent ambiguity, shifted the burden of proof as to the issue of sanity onto the defendant (SF 395–99);

16. The trial court refused to insert an instruction to the jury that "because [Riley] was previously adjudicated not guilty by reason of insanity, the burden of proof [was thereafter] on the State to prove beyond a reasonable doubt that at the time of the conduct charged, [Riley] was sane" (SF 399–400); and

17. The trial court overruled Riley's objection to the State's closing argument, in which the prosecutor commented on Riley's failure to introduce evidence with respect to his insanity: "[h]e is not in-

---

**1.** The charge provided is analogous to that provided in cases involving murder and the lesser included offense of voluntary manslaughter.

sane. He is not insane under our law. I don't care what California does. In Texas, folks, he's not insane. He's responsible for his actions. *If he had one person, professional person, to come forward and tell you that this man was insane on that night or even had an opinion about it, don't you know he would have brought that person to you? Don't you know he would have brought you*—(SF 431–32).

We believe that the quantity and depth of this conflicting testimony and evidence offered by both parties regarding Riley's sanity required the court to administer an unambiguous charge to the jury. In considering the entirety of the record before us, we conclude that the failure to do so constituted *harmful* error, especially in light of our previous finding that the charge given impermissibly shifted the burden of proof as to the issue of sanity away from the State. *Almanza v. State*, 686 S.W.2d at 171.

In summary, we find that the trial court erred in refusing Riley's requested instructions. Riley's first point of error is sustained. In light of our holding, it is unnecessary for us to consider Riley's remaining point of error.

This case is reversed and remanded.